**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DANIEL Y. MAMAN, M.D., on BEHALF of PATIENT AS,<br><br>Plaintiff,<br><br>v.<br><br>QUALCARE, INC., and AFFILIATED PHYSICIANS AND EMPLOYERS HEALTH PLAN,<br><br>Defendants. | Case No. |

**COMPLAINT**

By way of this Complaint, and to the best of its knowledge, information and belief, formed upon a reasonable inquiry under the circumstances, Plaintiff Daniel Y. Maman, M.D., on behalf of Patient AS ("Maman" or "Plaintiff"), brings this action against QualCare, Inc. ("QualCare") and Affiliated Physicians and Employers Health Plan (the "Plan") (collectively, "Defendants").

1. This is an action concerning Defendants' under-reimbursement of Maman on behalf of Patient AS for post-mastectomy breast reconstruction surgical and other surgical services.

2. QualCare was the insurer of the Plan, established by the Affiliated Physicians and Employers Master Trust ("Trust"). The Trust is licensed in the state of New Jersey as a self-funded Multiple Employer Welfare Arrangement ("MEWA"). The Plan is an Employee Welfare Benefit Plan under ERISA. Maman's Patient, AS, was a Plan participant.

3. Patient AS was initially diagnosed with breast cancer. She underwent a mastectomy, and following this, on June 14, 2016, Maman performed bilateral breast reconstruction surgeries.

1

4. Maman was an out-of-network provider, meaning that he did not participate in QualCare's network.

5. Dr. Maman performed the medically necessary pre-authorized breast reconstruction surgeries on Patient AS and submitted invoices in the form of CMS-1500 forms as required to QualCare for a total amount of $360,000.00. Defendants reimbursed Plaintiff only $5,863.46, or less than 2% of the total amount, leaving Patient AS with an out-of-pocket amount of $354,136.54.

6. Defendants did so notwithstanding that breast reconstruction is a federal mandate under the Women's Health and Cancer Rights Act ("WHCRA"), which requires group health plans such as the Plan to cover breast reconstruction surgery after a mastectomy.

## JURISDICTION

7. The Court has subject matter jurisdiction over Plaintiff's ERISA claims under 28 U.S.C. § 1331 (federal question jurisdiction).

8. The Court has personal jurisdiction over the parties because Plaintiff submits to the jurisdiction of this Court, and Defendants systematically and continuously conduct business in the State of New Jersey, and otherwise have minimum contacts with the State of New Jersey sufficient to establish personal jurisdiction over them.

9. Venue is appropriately laid in this District under 28 U.S.C. § 1391 because (a) QualCare transacts business in the District of New Jersey; (b) the Plan is found in the District of New Jersey; and (c) Plaintiff transacts business in the District of New Jersey.

## PARTIES

10. Plaintiff specializes in breast reconstruction and other microsurgical procedures. His office is in New York City.

11. Defendant QualCare is a health care insurance company. It is the Third-Party Administrator for the Plan. It is a wholly owned subsidiary of QualCare Alliance Networks, Inc., which in turn is a wholly owned subsidiary of Cigna Health and Life Insurance Company. Its principal office is in Piscataway, New Jersey.

12. Defendant Affiliated Physicians and Employers Health Plan, through its Plan Administrator, the Trust, is based in Somerset, New Jersey.

## FACTUAL ALLEGATIONS

13. On June 14, 2016, Patient AS, who had been diagnosed with breast cancer, and underwent a bilateral mastectomy followed by radiation to the chest and a failed breast reconstruction surgery due to radiation damage, underwent a new breast reconstruction procedure. This surgery was performed by Dr. Maman. The surgery was performed using the bilateral Deep Inferior Epigastric Perforator ("DIEP") flap micro surgical reconstruction procedure.

14. The DIEP reconstruction surgical procedure is a complex microsurgical procedure that is performed only by a small number of reconstruction surgeons who are trained in the technique. It is a lengthy microsurgery procedure that uses the abdominal muscle tissue to make a flap that the surgeon uses as the basis for a new breast, and it results in fewer donor site complications than other surgical techniques.

15. The breast reconstruction surgeon first creates breast flaps from the abdominal tissue grafts of the patient. Normally, the surgeon places tissue expanders and saline in the flaps that will become the reconstructed breasts. The tissue expanders expand the skin and allow the subsequent placement of the breast implants. In this case, the surgery was further complicated by intensive scarring caused by the prior radiation treatment this patient has incurred.

16. After performing this breast reconstruction surgery, Plaintiff submitted an invoice on a CMS-1500 form to QualCare, as required, for $310,000.00. This represented the billed

amount for Dr. Mamon as co-surgeon for the breast reconstruction surgery. The billed amounts, paid amounts, and CPT codes were as follows:

| CPT | Billed Amount | Paid Amount |
| --- | --- | --- |
| S2068,62-RT | $98,000.00 | $1,093.39 |
| S2068,62-LT | $98,000.00 | $1,772.67 |
| 15734-59-RT | $45,000.00 | $736.89 |
| 15734-59-LT | $45,00.00 | $1,058.59 |
| 38530-59-RT | $12,00.00 | $513.43 |
| 38530-59-LT | $12,00.00 | $513.43 |
| **Total** | **$310,000.00** | **$4,688.40** |

S2068 is a HCPCS Level II Code for a DIEP procedure. CPT code 15734 is a flap procedure. CPT code 38530 is Excision Procedures on the Lymph Nodes. Modifier -59 means a procedure that is distinct from other services performed on the same day. Modifier -62 means a co-surgeon.

17. Patient AS owes $305,311.60 for her breast reconstruction surgery, or 98% of the total amount.

18. As a sign of the arbitrariness of Defendants' reimbursement, they paid differing amounts for the same CPT or HCPCS codes for the right and left breasts.

19. Qualcare provided no explanation or reason in its Explanation of Benefits ("EOB") for its adverse benefit determination. This alone represented a violation of ERISA.

20. Since Defendants paid some amount for each of the billed CPT codes, this meant that they concluded that each of the billed procedures was medically necessary.

21. Dr. Maman filed an appeal on behalf of Patient AS on May 25, 2017. He filed a second-level appeal on September 13, 2017.

22.     The Plan denied the second-level appeal on October 9, 2017, stating that Dr. Maman was out-of-network. It made no reference to the Plan's requirement to cover breast reconstruction surgery under the WHCRA, or to the fact that its Third-Party Administrator, QualCare, did not have Board-certified breast reconstruction surgeons qualified to perform DIEP procedures with admitting privileges at Englewood Hospital.

23.     On June 20, 2016, Dr. Maman performed a second breast reconstruction procedure on Patient AS, for permanent insetting of the flaps and creation of the breast pockets. He received prior authorization for the medically necessary procedures from QualCare.

24.     The billed amounts, paid amounts, and CPT codes were as follows:

| CPT | Billed Amount | Paid Amount |
|---|---|---|
| 14301-58 | $25,000.00 | $587.53 |
| 14301-58 | $25,000.00 | $587.53 |
| **Total** | **$50,000.00** | **$1,175.06** |

CPT code 14301 means Adjacent Tissue Transfer or Rearrangement Procedures on the Integumentary (Skin) System. Modifier -58 means a staged or related procedure performed during the postoperative period of the first procedure by the same physician.

25.     Patient AS owed $48,824.94 for her breast reconstruction surgery, or 98% of the total amount.

26.     Qualcare again provided no explanation or reason in its EOB for its adverse benefit determination, another violation of ERISA.

27.      Dr. Maman filed an appeal on behalf of Patient AS on May 25, 2017. He filed a second-level appeal on September 8, 2017.

28. QualCare denied the first-level appeal on September 6, 2017. It stated that the "service was reimbursed at the correct limiting charge utilized by the member's plan for an out-of-network provider."

29. The Plan denied the second-level appeal on October 9, 2017, stating that Dr. Maman was out-of-network. It made no reference to the Plan's requirement to cover breast reconstruction surgery under the WHCRA, or to the fact that its Third-Party Administrator, QualCare, did not have Board-certified breast reconstruction surgeons qualified to perform DIEP procedures with admitting privileges at Englewood Hospital.

30. Under the Plan, out-of-network services normally were to be paid at 140% of the Medicare fee schedule. However, S2068 is a HCPCS Level II Code which Medicare recognizes but for which it does not specify a rate.

31. Under those circumstances, the Plan states that it pays based on "Claims Administrator review and approval of comparable services and recommendations."

32. Defendants made no reference in their appeal denial letters to Claims Administrator review for S2068. In its September 6, 2017 letter, QualCare represented that it had based reimbursement on 125% of the Medicare rate.

33. Defendants cannot legitimately base reimbursement on "Claims Administrator review and approval of comparable services and recommendations" for S2068. There are no services or surgeries comparable to breast reconstruction.

34. Nor can Defendants legitimately reimburse Dr. Maman based on any out-of-network rate. Post mastectomy breast reconstruction surgery is covered under the WHCRA.

### Full Coverage of Breast Reconstruction Surgery under the Women's Health and Cancer Rights Act

35. Breast reconstruction is a federal mandate under the Women's Health and Cancer Rights Act ("WHCRA"), enacted in 1998, which requires group health plans to cover breast reconstruction after a mastectomy. This law, codified at 29 U.S.C. § 1185b, states:

> (a) In general. A group health plan . . . shall provide, in case of a participant or beneficiary who is receiving benefits in connection with a mastectomy and who elects breast reconstruction in connection with such mastectomy, coverage for –
>
> > (1) all stages of reconstruction of the breast on which mastectomy has been performed . . . in a manner determined in consultation with the attending physician and the patient. Such coverage may be subject to annual deductibles and coinsurance provisions as may be deemed appropriate and as are consistent with those established for other benefits under the plan or coverage . . .
>
> (d) Rule of construction. Nothing in this section shall be construed to prevent a group health plan or a health insurance issuer offering group health insurance coverage from negotiating the level and type of reimbursement with a provider for care provided in accordance with this section.

36. Under 29 U.S.C. § 1185b(c), a "group health plan, and a health insurance issuer offering group insurance coverage in connection with a group health plan, may not (2) penalize or otherwise reduce or limit the reimbursement of an attending provider . . ." Under 29 U.S.C. § 1185b(d), a group health plan or insurer may negotiate with a provider. Therefore, under the WHCRA and the terms of the Plan the Defendants should have, but failed to, negotiate with Plaintiff to eliminate the balance bill and all other out-of-network patient liability amounts.

37. The WHCRA was enacted in October 21, 1998, not only because of horror stories of "drive-through mastectomies" where women were forced into four-hour out-patient mastectomy surgeries by their insurance companies to save money, but because of denials of coverage for breast reconstructions on the basis that such reconstructions were cosmetic. As Senator Snowe stated in committee:

> We have also found that breast reconstructive surgery is considered cosmetic surgery. Well, it is not. Forty-three percent of women who want to undergo breast reconstructive surgery cannot because it is deemed cosmetic. And that is wrong. Breast reconstructive surgery is designed to restore a woman's wholeness.

144 Cong. Rec. § 4644 at *4648 (May 12, 1998).

38. Accordingly, breast reconstruction was a covered service under Patient AS's Plan.

39. The Plan acknowledged the broad coverage requirements of the WHCRA in the Summary Plan Description ("SPD"), as follows:

> **Coverage for Reconstructive Surgery Following Mastectomy**
> For individuals receiving mastectomy-related benefits, coverage will be provided in a manner determined in consultation with the attending Physician and the patient, for:
> 1) All stages of reconstruction of the breast upon which the mastectomy has been performed,
>
> 2) Surgery and reconstruction of the other breast to produce a symmetrical appearance,
>
> 3) Prostheses, and
>
> 4) Treatment of physical complications of the mastectomy of the mastectomy, including lymphedema.

Lymphedema is obstruction of the lymph nodes, commonly caused by cancer treatment (radiation), as was the case of Patient AS. Prosthesis include the breast implants.

40. Notwithstanding this federal mandate, because upon information and belief QualCare did not have any in-network providers with admitting privileges at Englewood Hospital and Medical Center who were qualified to perform the breast reconstruction surgery that was performed on Patient AS, it should have entered into an agreement with Dr. Maman to grant an in-network exception and should not have charged Patient AS for out-of-network patient responsibility amounts..

41. Dr. Maman attended medical school at the Mt. Sinai School of Medicine and completed a six-year Plastic Surgery residency at Mt. Sinai. He then completed fellowship training

at the Massachusetts General Hospital/Harvard Medical School in implant and microsurgery breast reconstruction. Dr. Maman also held a teaching position at Harvard Medical School and was a staff surgeon at Massachusetts General Hospital.

42. Defendants' decision to assess the patient $354,136.54 in out-of-pocket costs for breast reconstruction surgeries that must be covered was not a coverage decision. It was, instead, a decision forcing Patient AS to self-insure her own breast reconstruction surgery, in violation of the WHCRA.

43. Defendants' denial was also a violation of New Jersey law. On May 3, 2013, the Commissioner of the New Jersey's Department of Banking and Insurance ("DOBI") issued Bulletin 13-10 based on New Jersey statutes, noting that "It has come to the Department's attention that there have been recurring instances of the inability of patients to obtain in-network benefits for the services non-network surgeons performing breast reconstruction as part of the surgical procedure in which a mastectomy is performed. In some cases, carriers have been declining patient requests to use out-of-network surgeons, asserting the availability of in-network surgeons. However, the in-network surgeons frequently do not perform, or are not qualified to perform, the particular type of requested reconstructive surgery."

44. In this case, Defendants did not decline Plaintiff AS's request to have Dr. Maman perform her breast reconstruction surgery. Rather, knowing that there was no in-network provider who could perform this surgery, Defendant paid Plaintiff the out-of-network rate - which forced Patient AS to self-insure 98% of her own breast reconstruction surgery.

45. The DOBI Commissioner concluded that when an insurer in New Jersey did not have a breast reconstruction surgeon in its network, it should approve the use of an out-of-network specialist but ensure that its member receives this service at the in-network co-pay amount. This requirement ensures that a cancer patient under New Jersey law and with coverage under the

WHCRA, as here, does not face ruinous balance bills simply by choosing an out-of-network specialist.

46. Based on the above, Defendant should have ensured that Patient AS received her breast reconstruction surgery at the in-network level of patient responsibility. Instead, Patient AS was charged the out-of-network-level liability.

47. Patient AS assigned her claim to Plaintiff. In addition, Patient AS designated Plaintiff as her Authorized Representative under ERISA for all purposes, including litigation. She stated: "I hereby convey to the Designated Authorized Representative to the full extent permissible under the law . . . any claim, cause of action or other right I may have . . . including . . . any administrative and judicial actions by the Designated Authorized Representative to pursue such claim, chose in action or right against any liable party . . . including, if necessary, to bring suit by the Designated Authorized Representative against any such liable party or employee group health plan in my name with derivative standing. . .

### Defendants' Failure to Provide Reasons and Basis for Adverse Benefit Determinations, In Violation of ERISA

48. Defendants failed to provide Plaintiff with any explanation of their adverse benefit determinations. The QualCare EOBs provided no explanations for the lowered reimbursements, in violation of ERISA. The appeal denials misquoted the terms of the Plan SPD, also in violation of ERISA.

49. 29 C.F.R. § 2560.503-1(g) provides as follows:

**Manner and content of notification of benefit determination.**

(1) The plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. Any electronic notification shall comply with the standards imposed by 29 CFR 2520 2520.104b-1(c)(1)(i), (iii), and (iv). The notification shall set forth, in a manner calculated to be understood by the claimant -

(i) The specific reason or reasons for the adverse determination;

(ii) Reference to the specific plan provisions on which the determination is based;

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

(v) In the case of an adverse benefit determination by a group health plan -

(A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

50. Defendant did not provide the information required by 29 C.F.R. § 2560.503-1(g), in violation of ERISA and the rules promulgated thereunder.

51. Under ERISA, when an insurer fails to follow the procedures set out in the Plan, as here, the claimant is deemed to have exhausted her administrative remedies.

52. Deemed exhaustion is set out in 29 C.F.R. § 2560-503-1, which states:

[I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

## COUNT I

### CLAIM AGAINST DEFENDANT QUALCARE FOR UNPAID BENEFITS
### UNDER EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA

53.   Defendant QualCare is obligated to pay benefits to the Plan participants and beneficiaries in accordance with the terms of the Plan's SPD, and in accordance with ERISA. This obligation arises under under ERISA.

54.   Defendant QualCare violated its legal obligations under this ERISA-governed Plan when it, together with the Plan, under-reimbursed Plaintiff for breast reconstruction surgeries provided to Patient AS by Plaintiff, in violation of the terms of the SPD and in violation of ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B) and § 502(a)(3), 29 U.S.C. § 1132(a)(3).

55.   Plaintiff submitted invoices to Defendant QualCare for $360,000.00.

56.   Defendant QualCare together with the Plan determined that the Allowed Amount was $5,863.46, leaving an under-reimbursed amount of $354,136.54. Defendant thereby reimbursed 2% of the total amount.

57.   Plaintiff seeks unpaid benefits and statutory interest back to the date Plaintiff's claims were originally submitted to Defendant QualCare. It also seeks attorneys' fees, costs, prejudgment interest and other appropriate relief against Defendant QualCare.

## COUNT II

### CLAIM AGAINST DEFENDANT AFFILIATED PHYSICIANS
### AND EMPLOYERS HEALTH PLAN FOR UNPAID BENEFITS
### UNDER EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA

59.   Defendant Plan is obligated to pay benefits to the Plan participants and beneficiaries in accordance with the terms of the Plan's SPD, and in accordance with ERISA. This obligation arises under the under ERISA.

59. Defendant Plan violated its legal obligations under this ERISA-governed Plan when it, together with QualCare, under-reimbursed Plaintiff for breast reconstruction surgeries provided to Patient AS by Plaintiff, in violation of the terms of the SPD and in violation of ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B) and § 502(a)(3), 29 U.S.C. § 1132(a)(3).

60. Plaintiff submitted invoices to Defendant QualCare for $360,000.00.

61. Defendant Plan together with QualCare determined that the Allowed Amount was $5,863.46, leaving an under-reimbursed amount of $354,136.54. The Plan thereby reimbursed 2% of the total amount.

62. Plaintiff seeks unpaid benefits and statutory interest back to the date Plaintiff's claims were originally submitted to Defendant QualCare. It also seeks attorneys' fees, costs, prejudgment interest and other appropriate relief against Defendant Plan.

## COUNT III

### CLAIM AGAINST AFFILIATED PHYSICIANS AND EMPLOYERS HEALTH PLAN FOR VIOLATION OF ERISA 404 § (A)(1)(B) AND 502 § (A)(3)

63. The Plan Defendant is a fiduciary, and under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104 § (a)(1)(B) it must discharge its duties solely in the interest of Plan participants and Beneficiaries.

64. The Plan Defendant must act prudently with the care, skill, prudence and diligence that a prudent fiduciary would use, and must ensure that it is acting in accordance with Plan documents, such as its SPD.

65. An ERISA fiduciary cannot fully delegate its fiduciary responsibilities to another entity. For example, the Plan Defendant cannot fully delegate its fiduciary responsibilities to administer claims to a Third-Party Administrator (such as Defendant QualCare) and be free of its fiduciary responsibilities under ERISA.

66. As a fiduciary, the Plan Defendant owed Plaintiff (Patient AS) a duty of loyalty and the avoidance of self-dealing. It cannot permit its Third-Party Administrator to make claims determinations that would violate the terms of its SPD, including federal coverage mandates.

67. The Plan Defendant breached its duty of loyalty and violated its fiduciary responsibilities to Plaintiff (Patient AS) by failing to ensure that its Third-Party Administrator reimbursed Plaintiff according to the Plan Defendant's SPD. Instead, Defendants under-reimbursed Plaintiff for two surgeries. These two surgeries were not covered under the terms of the SPD, which required the surgeries to be covered.

68. In addition, the Plan Defendant failed to monitor the Third-Party Administrator's misconduct, despite the Plan Defendant's continuing fiduciary duty to do so.

69. Plaintiff seeks relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which includes declaratory relief, surcharge, profits, and removal of a fiduciary that breached its duties.

**WHEREFORE**, Plaintiff demands judgment in its favor against Defendants as follows:

(a) Ordering the Court to recalculate and issue unpaid benefits to Plaintiff;

(b) Ordering declaratory relief, surcharge, profits, and removal of the Plan Defendant for breach of its fiduciary duty and loyalty;

(c) Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees under ERISA, and costs and expenses in amounts to be determined by the Court;

(d) Awarding prejudgment interest; and

    (e)  Granting such other and further relief as is just and proper.

Dated: January 6, 2020

                /s/ Michael F. Fried
                AXELROD LLP
                354 North Fourth Avenue
                Highland Park, NJ 08904
                (732) 718-6171
                mfried@axelrodllp.com

                Robert J. Axelrod
                AXELROD LLP
                800 Third Avenue, Suite 2800
                New York, NY 10022
                (646) 448-5263
                rjaxelrod@axelrodllp.com

                Leslie S. Howard
                COHEN HOWARD LLP
                766 Shrewsbury Avenue, Suite 200
                Tinton Falls, NJ 07724
                (732) 747-5202
                lhoward@cohenhoward.com

         Attorneys for Plaintiff Daniel Y. Maman, M.D.